[Civ. No. 2957. Fourth Dist. Jan. 20, 1942.]

BEAULAH ANN FOWLER et al., Appellants, v. VERNER LEE ALLEN, Respondent.

Francis J. Gabel and John L. Kearney for Appellants.

Sarau & Thompson for Respondent.

BARNARD, P. J.—This is an action for damages arising from the death of John Fowler, who was struck and killed by a truck owned and operated by the defendant. A jury returned a verdict in favor of the defendant and the plaintiffs have appealed from the judgment.

The deceased was employed by a contracting firm which was engaged in building a new portion of the state highway between Beaumont and Banning. The new portion was just south of the old highway so that when it was completed there would be two roads with an unpaved strip between them. The work had commenced at Banning and was proceeding west toward Beaumont. The pavement on the new road was 26 feet wide and the paving was being done in two parallel sections each 13 feet wide. On the day in question, the southerly 13 feet of the new road had been paved several hundred feet further toward Beaumont than had the northerly 13 feet. The ground on the northerly 13 feet had been prepared for the paving material and on the northerly edge thereof a ridge of dirt about nine inches high, called a "berm," had been built up for the purpose of keeping the paving material in its proper bed.

The method used was to bring the paving material in dump trucks from a plant near Beaumont, some ten of these trucks being used on this occasion. These trucks were driven easterly on the old highway and when they arrived near the scene of the operations the drivers would turn south and after crossing the berm would head west and stop on the northerly 13 feet of the new road. The truck would then be backed between the berm and the completed half of the pavement to the point where the work was going on, where the load would be dumped in front of a spreader operated by a diesel engine. The truck would then drive away and another truck would back in, the trucks coming and unloading as often as every two or three minutes.

As these trucks passed back and forth the berm at the northerly edge of the new road would be broken down in spots and it was constantly necessary to build up and straighten this berm. This work was done with shovels by some of the men assisting in the spreading operations. At the time of the accident, John Fowler and another employee were thus working on this berm at the northerly edge of the new road and at a point about midway between the spreader and the westerly end of the completed pavement on the south half of the new road. Fowler had been employed by the general contractor for two or three months before the accident, working half a day as a truck driver and half a day as a helper around the job. For two or three weeks he had been spending half his time shoveling on this berm. He was a young man with good eyesight and hearing. In addition to the knowledge that may be assumed from his experience there was testimony that he had been warned several times by his superiors and fellow employees to watch out for the trucks, the last time being but a few days before the accident. One witness, an inspector for the State Highway Department, testified that on one occasion he pulled Fowler out of the way of a truck that was backing into the spreader and pointed out to him that he was working on the blind side of the trucks and that the truck drivers could not see him.

At the time in question, a clear day about 10 o'clock in the morning, while Fowler was thus working on the berm he was struck and killed by respondent's truck as it was being backed in to dump the load in front of the spreader. The respondent was an independent contractor, owning his own truck. It was customary, while the trucks were backing in for a man on the

front end of the spreader to indicate where he wanted the truck to come on the 13-foot strip by holding a shovel at a spot near the front of the spreader where he desired the left-hand wheels of the truck to come. The respondent testified that on this occasion he lined up his left wheels with the shovel held by the man on the spreader, as he had done on previous trips, and that for this purpose he was looking back through the left cab window of his truck. There is evidence that at the time of the impact the respondent's truck was traveling at about the center of the 13-foot strip down which it was backing. There is also evidence that at the time Fowler was struck he had his back partly toward the spreader and that he was hit partly on his left side and partly on his back.

The appellants mainly rely for reversal upon asserted errors in instructions and in this connection argue that the evidence presents a close case with a preponderance thereof favoring them and, therefore, "errors in the instructions readily assume prejudicial proportions." We are unable to agree with this contention as to the preponderance of the evidence. Had the verdict been the other way a rather close question would have been presented as to whether it was sufficiently supported.

An instruction that "contributory negligence as used in these instructions means the want of ordinary care on the part of the deceased person which contributed proximately to the accident" is first attacked. It is argued that the instruction as thus given assumed that the deceased was guilty of contributory negligence and, in effect, directed a verdict for the defendant. No such assumption appears and the contention is without merit. The instruction was offered by the appellants but then contained another portion applying the rule more directly to John Fowler and this accident. The court struck out that portion because the same was included, almost word for word, in another instruction which was given. The net result is that the court gave a general definition of contributory negligence which was followed by another instruction correctly giving the law of contributory negligence as it was involved in this case.

The appellants next contend that two instructions were improperly given as covering the doctrine of assumption of risk, which doctrine was not applicable here. The first of these instructions stated that Fowler, when he went upon the premises, "assumed all of the ordinary reasonable risks of

dangers involved in the general conditions as they existed there, as they were apparent or should have been apparent to him.'' The second was as follows:

''You are instructed that one who works at a dangerous vocation, or one who voluntarily places himself in a position of danger, cannot close his eyes to such danger or momentarily forget a known danger, but is required to exercise a quantum of care that is commensurate with such danger as may be known to him. And if he momentarily forgets such known danger or closes his eyes to such danger, and is thereby injured, and the proximate cause of his injury is his forgetfulness of such danger, or his failure to make reasonable use of his faculties under such circumstances, he cannot recover for the injury.''

No attempt was made to rely on the doctrine of assumption of risk and these instructions related to the issue of contributory negligence on the part of the deceased, and they were neither erroneous nor prejudicial in view of the issues and the evidence. (*Potts* v. *Crafts*, 5 Cal. App. (2d) 83 [42 Pac. (2d) 87]; *Warnke* v. *Griffith Co.*, 133 Cal. App. 481 [24 Pac. (2d) 583]; *Ramos* v. *Service Bros.*, 118 Cal. App. 432 [5 Pac. (2d) 623].) It is next urged that an instruction to the effect that the defendant could rely on the presumption that the decedent would exercise ordinary care was prejudicially erroneous because it failed to include a statement that the defendant himself must be exercising ordinary care. While the omitted matter should have been included, as has been frequently pointed out, it does not follow that the omission thereof constitutes reversible error especially under such a factual situation as here appears. This was held in a case which was strikingly similar in its essential facts to the one now before us. (*Ramos* v. *Service Bros., supra.*) In other instructions the jury was told that it was the duty of the defendant to exercise ordinary care in operating his truck and to avoid injuring persons engaged in working near his truck; that just as the respective rights of the deceased and the defendant were equal in every respect so also was the duty of each to exercise ordinary care under all the circumstances; and that the deceased was entitled to a similar presumption that the defendant would exercise ordinary care and obey the law. While the instruction in the form given is not to be commended no reversible error appears under the circumstances of this case.

■ Error is next assigned in the giving of two instructions which were to the general effect that a duty rested upon the deceased to exercise an amount of care commensurate with the danger surrounding his position at the time, that the amount of care required of him must be measured by the circumstances and conditions surrounding him, and that while the rights of the deceased and of the defendant were equal in every respect, including the right to be where they were at the time, it was the duty of each to exercise ordinary care under all of the circumstances and the deceased could not rely upon the assumption that he would not be injured by a passing truck but was required to keep such a lookout for such trucks as an ordinarily prudent person would keep under similar circumstances. The appellants concede that these instructions are in themselves correct but argue that they become erroneous and prejudicial for the reason that the court refused to give two other instructions offered by them, with the result that the criticized instructions placed a greater burden of care on the decedent than on the defendant. The instructions were not only proper but they were not rendered erroneous by the refusal of the two other instructions referred to, the substance of which was sufficiently covered in other instructions which were given. The instructions did not place a greater burden of care on the decedent than on the defendant and the point thus raised is without merit.

■ The appellants next complain of the court's refusal to give an instruction to the effect that forgetfulness of a known danger in order to constitute negligence must be such that the forgetfulness or lack of memory constitutes a failure to use ordinary care, and that the deceased was not chargeable with contributory negligence, as a matter of law, merely because he momentarily forgot the existence of the trucks. No claim was made that the deceased was guilty of contributory negligence as a matter of law and the issue was presented to the jury as a question of fact. The first part of this refused instruction was sufficiently covered in another instruction which was essentially to the same effect and in which the jury was told that while a person could not close his eyes to known dangers it was necessary that forgetfulness of a known danger must be such as to be a failure to exercise care under the circumstances in order that the same constitute negligence. The jury was sufficiently instructed in this regard and no error in that connection appears.

The last point raised is that the court erred in admitting two items of evidence over the objection of the appellants. One of the other workmen was allowed to testify that when he shoveled on this berm he watched out for trucks backing into the area where the accident occurred. Conceding that this was error no prejudice appears since at least three witnesses for the appellants testified, without objection, that this was the customary procedure. In the other instance, a witness who had been a superintendent on this job, was allowed to testify that the respondent had been driving a truck on that job for nearly three weeks and that he had had no trouble with him in the methods of his operations. While we think this evidence should not have been admitted no prejudice appears and it cannot be held, under the circumstances of this case, that its reception could have conceivably affected the result. As we view it, this is not a close case and any errors which appear are neither sufficient to justify nor to require a reversal.

The judgment is affirmed.

Marks, J., and Griffin, J., concurred.