[Civ. No. 16521.   First Dist., Div. Two.   Mar. 19, 1956.]

ANAHID KARAGEOZIAN, Appellant, v. DR. CRAWFORD
BOST et al., Respondents.

Shirley, Saroyan, Calvert & Peterson, S. M. Saroyan and Harry P. Calvert for Appellant.

Pelton, Gunther, Durney & Gudmundson, Alexander, Bacon & Mundhenk, Herbert Chamberlin and Lamb, Hoge & Killion for Respondents.

DOOLING, J.—This is an appeal by plaintiff from a judgment pursuant to a jury verdict in favor of defendants Bost, Kochever and Gillis.

Appellant by this action sought to recover for personal injuries alleged to have been incurred as a result of a series of rear-end automobile collisions.

The accident occurred Sunday evening, August 10, 1952, at about 10:30 p.m. on United States Highway 101 in Marin County. It was a clear, dry night and the road was straight with a slight downgrade. The traffic was heavy at about the time of the accident. All of the vehicles involved were traveling in a southerly direction towards San Francisco in the inner lane of the four lane highway.

Appellant was riding in a 1952 Chrysler automobile driven by her husband. She was sitting next to him on the front seat. Just prior to the accident this automobile was traveling at a speed of 30 to 35 miles per hour and was from 20 to 25 feet behind the southbound automobile immediately ahead of it in the same traffic lane.

Respondent Bost was driving a 1950 Chevrolet automobile at a speed of about 30 to 35 miles per hour at a distance of from 20 to 40 feet behind the automobile in which appellant was riding.

Respondent Gillis was driving a 1951 Chevrolet behind that of respondent Bost. He was traveling at a speed of about 35 miles per hour and was approximately 120 feet behind the Bost automobile.

The third respondent, Kochever, was driving a 1952 Chevrolet behind the car driven by respondent Gillis. He testified that he was traveling at about 40 miles per hour and was about 100 feet from the Gillis car when he noticed that it was stopped. He then started to slow down. He stated that he was barely moving, going perhaps a couple of miles per hour, when he bumped the rear end of the car ahead of him. He testified that at the time his car came into contact with the Gillis car it did not push the Gillis car into the rear of the Bost automobile.

Respondent Bost testified that a southbound automobile directly in front of the car in which appellant was riding (the Karageozian automobile) suddenly moved out of the lane in which it was traveling into the northbound traffic lane; that the Karageozian automobile in front of him suddenly stopped on the highway; and that he immediately applied

his brakes and the collision with the auto ahead occurred when his speed was from 5 to 10 miles per hour.

After this first collision a second impact occurred. The Gillis automobile collided with the rear end of the Bost automobile and apparently forced it again into contact with the Karageozian automobile. Respondent Gillis claimed that he was pushed into the Bost automobile by the force of the impact of respondent Kochever's car with his but Kochever denied this. Respondent Gillis testified that he heard the Karageozian-Bost crash and saw the stop lights flash on the Bost automobile. He stated that he then applied his brakes and brought his car to a stop 10 to 15 feet behind the Bost automobile when he was struck by the respondent Kochever.

Appellant first argues that the evidence is insufficient to support the verdict and judgment. She contends that the respondents were guilty of negligence as a matter of law and that the record is devoid of evidence to support the defense of contributory negligence. ■ She states, relying on California Vehicle Code, section 531, that respondents were required to keep at such a distance and to maintain such control over their vehicles as would enable them to stop without striking the vehicles ahead of each of them. However, even in the cases relied on by appellant, it is recognized that an automobile driver is not necessarily guilty of negligence because he collides with the rear of another vehicle. (*Elford* v. *Hiltabrand,* 63 Cal.App.2d 65, 74 [146 P.2d 510].) The question whether the respondents were operating their respective cars in a careful and prudent manner would seem to present a question of fact to be determined by the jury. (*Landrum* v. *Severin,* 37 Cal.2d 24 [230 P.2d 337]; *Lowenthal* v. *Mortimer,* 125 Cal.App.2d 636 [270 P.2d 942].) In *Giles* v. *Happely,* 123 Cal.App.2d 894, 899-900 [267 P.2d 1051], it was stated that a question of fact and not law was presented as to whether a car following another at a distance of 18 feet was following unreasonably close under the circumstances. Here there was testimony that all respondents were following the cars ahead of them at greater distances than 18 feet.

The defense of contributory negligence also presented a question of fact. ■ The contributory negligence of appellant's husband, Avedis Karageozian, would be imputable to appellant. (*Johnson* v. *Warner,* 116 Cal.App.2d 598, 604 [254 P.2d 124].) Appellant admits that this question is rarely one of law and the general rule is that it normally presents a factual question for determination by the jury.

(*Van Cise* v. *Lencioni*, 106 Cal.App.2d 341, 346 [235 P.2d 236].) ■ Here there was testimony that the car in which appellant was riding was traveling at a speed of 35 miles per hour at a distance of 25 feet behind another car traveling immediately ahead of it in the same lane of traffic and stopped suddenly. On this record the jury might have found that appellant's husband was contributively negligent in driving too fast under the circumstances, in following the car ahead too closely, in failing to keep a proper lookout, or in stopping too suddenly.

■ Appellant's next major contention is that the trial court erroneously and prejudicially made certain positive statements thereby withdrawing from the jury several of the crucial issues of fact to be determined from the testimony and evidence. It appears that her counsel in questioning respondent Bost under Code of Civil Procedure, section 2055, asked him how fast he was traveling at the time of the impact of his car with that of appellant. Respondent answered "somewhere around five to ten miles an hour." The following then occurred:

"Q. I will ask you to read from Page 12 of your deposition, Line 6, through Line 7, Doctor, and ask you if you were asked those questions and gave those answers.

"MR. PHELPS (Respondent's attorney): Now I think that is unfair—— A. It is corrected on the next page.

"MR. PHELPS: I will show your Honor the deposition.

"THE COURT: Well, I haven't read it. I think the Doctor said yes. A. May I read it?

"THE COURT: Yes.

"MR. CALVERT: Lines 6 and 7 of Page 12. A. (Reading)

"'Q. What was your approximate speed at the time of impact? A. 30 to 35 miles an hour.'——

"MR. CALVERT: Thank you, Doctor. A. Now just a minute.

"MR. CALVERT: Just a moment——

"THE WITNESS: Judge, I don't think this is fair. I didn't understand his question, and I corrected myself immediately after, and Mr. Calvert knows it.

"MR. CALVERT: It is a rather simple question.

"THE WITNESS: Mr. Calvert, I didn't understand the question.

"MR. PHELPS: Just a minute, Doctor.

"THE COURT: (After examination of deposition) Oh, yes, the Doctor is correct (reading):

" 'Q. What was your approximate speed at the time of impace? (sic)   A. 30 to 35 miles an hour.

" 'Mr. Durney (respondent's attorney):   I don't think you answered the question, Doctor.

" 'The Witness: At the time of the impact?

" 'Mr. Durney: When you actually hit him. A. At the time of the impact, I hit the other car? At the time of impact; is that your question?

" 'Mr. Calvert: Yes.   A. I should think five to ten miles an hour.'  That is the way it reads.

"Mr. Calvert:  Your Honor, may I make a record on this?   I think it is a matter of argument, and I want the record to show an exception to the statement of the Court.

"The Court:  No, it's a mismunderstanding, a point at which the speed was to be estimated, and as he went along and questions were asked by the examining counsel, he came to the conclusion that the point asked for was a different point, and he said five to ten.   However, that deposition may be offered in evidence and may be admitted in evidence in order to encompass any argument, if you think there is any."

Appellant claims that respondent Bost in substance by the above stated:  that appellant was unfair in the trial of this case; that he did not understand the question as asked at the time of his deposition; that he was only going 5 to 10 miles per hour at the time of the impact; and that he was not going 35 miles per hour at the time of the impact.   She further asserts that by the statement "Oh, yes, the Doctor is correct" the court told the jury that the above was true.   The court's comments were unfortunately framed but we cannot see that appellant was prejudiced.   The deposition itself was clear that defendant Bost had almost immediately corrected his testimony at the time that the deposition was being taken.   This matter was brought up again by appellant's counsel over the objection of respondent's attorney and at that time Bost again explained his initial misunderstanding.   Further the court instructed the jury ". . . if the Court, in discussing with counsel any objection or motion, made any statement which seemed to you to reflect upon counsel, or seemed to you to indicate that the Court had some opinion upon the merits of the case or upon some fact or issue involved in the case, then the Court admonishes you to disregard any such statement if such statement was made, in reaching a verdict in this case."

Appellant complains of the following instruction given by the trial court:

"The law looks to the proximate cause and not to remote or secondary causes. If you find that the sole proximate cause of the accident was the negligence of some defendant other than the defendant Gillis, or Bost, or Kochever, then you must decide that no negligence on the part of defendant Gillis, or Bost, or Kochever, as you should find, proximately caused the accident. Even if there was negligence on the part of either of these defendants, he would not be responsible if between his negligence, if any negligence there was, and the accident, the act or omission of some other person or persons intervened and proximately caused the accident."

She claims that the court by this instruction told the jury that they should find that no negligence on the part of any of the respondents proximately caused the accident and in effect directed a verdict for respondents. The instruction is rather clumsily framed but, particularly when taken with the other instructions, it cannot have misled the jury. The jury was fairly instructed that it must consider the case against each defendant separately, that to find against any particular defendant it must find that that defendant was guilty of negligence which was a proximate cause of the accident, that it might find against one defendant whose negligence was a proximate cause of the accident and in favor of another who was not at fault, and that if the accident was proximately caused by the concurrent negligence of two or more defendants recovery might be had against all whose negligence concurred to cause the accident. ■ The criticized instruction must be read in the light of the other instructions. It is in the alternative, not the conjunctive. It treats separately the possible liability of "Gillis, *or* Bost, *or* Kochever" (not Gillis *and* Bost *and* Kochever). Its effect was to instruct the jury that if the negligence of any one of the defendants, "as you should find," was not the proximate cause because the sole proximate cause was the negligence of some other defendant they should not bring in a verdict against the defendant whose negligence was not a proximate cause.

■ Appellant attacks the following instruction on contributory negligence:

"Now these three defendants in their pleadings have alleged negligence on the part of the plaintiff in this action, which we define under the law to be contributory negligence, and we will seek to discover what is meant by that. When the negli-

gence of the injured party, that is the lady plaintiff in this case, if any, contributes proximately to the injuries complained of; the law would give her no redress; and if you find in this case that she, the plaintiff, was herself negligent, and such negligence contributed proximately to the injuries complained of, of course she could not recover from the defendant or defendants, or any of them, for it is the law in order to avoid injury to herself, plaintiff was bound to have exercised reasonable care to have avoided the same—that is, she was bound to use such care and diligence as a reasonable and prudent person would have exercised under like circumstances. Now of course she was not driving the car, but inasmuch as she and her husband are of course husband and wife, if you find that either one was negligent, and that such negligence contributed as a proximate cause to the accident, then under the law she, the wife, could not recover, although one may have been wholly innocent of any negligent conduct. That you may appreciate the reason for this rule, let me inform you that it is a rule that grows out of the rule of community property. Anything that either plaintiff may recover in this action would under the law of California be community property; that is, it would be property of both. Thus if you should make an award namely to one only, the other would have a community interest in the judgment, and if the other were guilty of contributory negligence you therefore would then be rewarding him or her for an accident for which he or she would be partly to blame." She claims that this instruction was erroneous because it interjected the question of the possibility of appellant's personal contributory negligence into the case when such question was not an issue. The instruction itself pointed out that plaintiff was not driving the car but that because of the community property law her husband's contributory negligence would bar her cause of action. The court followed this immediately with the following:

"In other words, contributory negligence is such an act or an omission on the part of the injured party plaintiff— that would be the husband here of plaintiff—but, because of the community property act . . . as amounted to a want of ordinary care, etc."

The instruction as a whole made it clear that the question of the husband's negligence was the one before the jury in this case.

Appellant next contends that the trial court erroneously and prejudicially instructed the jury on the doctrine that negligence is not based upon the possibility of avoiding an accident. Two instructions were given by the court on this subject. Appellant concedes that one of them was a correct statement of the law but argues that the giving of the other only served to overemphasize this defense to her prejudice. The instruction read:

"A finding of negligence cannot be based upon a possibility of avoiding an accident. If you find from the evidence that defendant Dr. Crawford Bost obeyed the law and did all that an ordinarily prudent person would have done under the circumstances for the protection of his own safety and to avoid the accident and injury, defendant Dr. Crawford Bost is not chargeable with negligence."

It is claimed that this was an incorrect statement of the law on the subject because by it the jurors' attention was centered on whether respondent Bost exercised care on his own behalf rather than on whether he exercised care not to injure others. However, it is clear from a reading of the entire instruction that the court did instruct that respondent Bost must have done all that an ordinarily prudent person would have done under the circumstances "to avoid the accident and injury." That was a correct statement of the law and the words "for . . . his own safety" do not detract from, but only add another element to, the otherwise correct instruction. Some repetition in the substance of instructions alone will not justify the reversal of a case. (*Dick* v. *Schoener,* 120 Cal. App.2d 230 [260 P.2d 965].)

Appellant's last contention is that the court erroneously and prejudicially permitted hearsay and opinion evidence over her objection. Dr. Knox H. Finley was called as a witness on behalf of the respondents. He testified that he received a medical report made out by Dr. Arthur R. Hartwig in making his diagnosis and examination of appellant. (The latter doctor had previously testified for respondents.) Respondents' attorney then proceeded to question Dr. Finley:

"Q. Did you make a summary of Dr. Hartwig's report? A. I did in my report.

"Q. Have you got that? A. Yes.

"Q. What is it?

"MR. CALVERT: Well, your Honor, Dr. Hartwig has been here and testified, and we have examined his report. It

would be his mere conclusion as to what his report showed. Dr. Hartwig has already testified and told us that.

"THE COURT: He has examined it only to come to his diagnostical opinion. That is part of the survey he made.

"MR. HOGE: Q. What do you have, Doctor? A. Well, Drs. Fourcade and Hartwig examined the patient on November 2 of last year, and they were unable to account for her complaints on the basis of orthopedic findings, and they felt it probably was of a psychiatric nature, and thought that she should be examined by a psychiatrist."

Appellant objects that the court thus allowed Dr. Finley to give a damaging and prejudicial opinion and conclusion as to facts upon which the best evidence had previously been introduced. Dr. Hartwig had testified that from an orthopedic point of view, as far as appellant's neck and upper extremities were concerned, appellant did not have positive findings and disability. He further stated that he did recommend that appellant have further examination "on the basis of her remarkable complaints that were not borne out by objective findings, and her easy 'weepsiness' in the examining room." There is nothing in Dr. Finley's summarization of Dr. Hartwig's report which is not substantially borne out by Dr. Hartwig's own testimony. We can find no prejudice in this incident.

Judgment affirmed.

Nourse, P. J., and Kaufman, J., concurred.